RICHARD ROBERTS and HOMER ROBERTS, appellants-cross-appellees, v. DEKALB AGRICULTURAL ASSOCIATION, INC., et al., appellees-cross-appellants.

No. 51820.

132

June 14, 1966.

Hutchison, Hurst & Duggan, of Sioux City, for appellants.

Kindig, Beebe, McCluhan & Rawlings, of Sioux City, and H. Blair White and George W. McBurney, of Chicago, Illinois, for appellees.

BECKER, J.—Plaintiffs allege that they bought some 41 bags of seed corn which they planted to 200 acres on their farm near Whiting. They further allege that the acreage should have produced 125 bushels per acre, and in fact it only produced 50 bushels per acre. They bring action in multiple counts alleging, among other things, fraud and deceit, breach of express warranty, breach of implied warranty, negligence with specific counts, and negligence relying upon res ipsa loquitur; in the various counts they demand actual damages and punitive damages.

Defendants admit it is a foreign corporation authorized to do business in Iowa, it is a grower, processer and seller of hybrid seed corn; defendant Fred Jary is a resident of Monona County and sells and delivers seed corn in the area of Whiting; in 1963 plaintiffs ordered certain seed corn from Fred Jary and in the spring of 1963 he delivered certain seed corn to plaintiffs. They also plead specific limitations of warranty as to the bags of seed corn and that it is the general custom and usage in the seed corn trade in the state of Iowa and particularly in Monona County to sell seed corn with a complete disclaimer of warranty as to quality. It will be noted that they do not admit that they ever sold seed corn to plaintiffs or the relationship, if any, between the two defendants.

On December 31, 1964, plaintiffs filed application for permission to file in excess of 30 interrogatories and attached thereto 64 proposed interrogatories. On January 7, 1965, defendants filed their objections to interrogatories. On February 16, 1965, defendants filed additional objections to plaintiffs' interrogatories.

There was a hearing on February 19, at which the court decided certain other matters, but postponed the matter of defendants' objections to specific interrogatories until March 19, 1965, for the reason that defendants desired to produce evidence

in connection therewith.

On March 16, 1965, the trial court entered an order which sustained plaintiffs' application for permission to file more than 30 interrogatories, decreed that the proposed 64 interrogatories attached to the application could be filed and should be considered filed as of March 16, 1965, and again set the hearing on objections to interrogatories for March 19. On that date the parties appeared before the court. The court immediately limited counsel to one hour, or less, each for the presentation of the submission of their respective sides in the matter of objections and additional objections to the interrogatories. Reasonable time not to exceed ten days was given to each side to file written briefs.

Counsel for defendants indicated that as the record then appeared there were objections to 44 interrogatories on the grounds that the information sought by each of the 44 interrogatories was completely irrelevant and immaterial to any issue in the case and in no way related the merits of the matter in litigation. Additional objection was made to 11 of the interrogatories on the ground that they were filed for the purpose of annoying and oppressing the defendants and to answer them would require the compilation by the defendant DeKalb of a vast amount of irrelevant data at great expense to DeKalb. Counsel indicated to the court that he had a witness present who would testify that the minimum cost of answering the 11 interrogatories would be $10,000 and asked that the court exercise its discretion to protect defendants from incurring this unreasonable $10,000 expense to answer irrelevant interrogatories.

Defendants also objected to eight of plaintiffs' interrogatories on the ground that they requested irrelevant trade secret information regarding DeKalb.

Defendants proposed to put on witnesses both in respect to the expenses to be incurred in answering the interrogatories and in connection with the trade secret aspect of the objections to the interrogatories. The court ruled:

"An offer by Dfts. to present testimony by witnesses in support of the objections to the Interrogatories is denied as the Court feels that objections to Interrogatories do not raise ques-

tions of fact requiring proof but merely provide a method to determine the propriety of the Interrogatories."

After hearing extensive oral arguments the court sustained objections to interrogatories Nos. 34, 39, 40 and 47, overruled objections to the other 60 interrogatories, and ordered the interrogatories answered within 30 days from April 16, 1965, under penalty of entering a judgment by default as provided by Rules of Civil Procedure.

Plaintiffs filed application for interlocutory appeal which was granted and assigned as error the sustaining of defendants' objections to interrogatories 34, 39, 40 and 47.

Defendants cross-appealed stating three propositions, first that the trial court erred in failing to sustain defendants' objections to all plaintiffs' 64 interrogatories because plaintiff failed to show good cause for being permitted to file in excess of 30 interrogatories; second the trial court erred in denying defendants an opportunity to present evidence in support of their objections which was contra to the Iowa Rules of Civil Procedure and a denial of due process; and third the trial court erred in fixing the sanction of judgment by default when it ordered defendants to answer plaintiffs' interrogatories within 30 days.

I. We first discuss defendants-cross-appellants' propositions. Defendants attack the interrogatories due to failure to make application for permission to file more than 30 in number and show good cause therefor. Part of the procedural difficulties here spring from the fact that defense counsel did not receive a copy of the application until about March 19, 1965, although the application had been on file since December 31, 1964. Why this omission occurred does not appear from the record. There is no showing that the omission was due to the neglect or fault of plaintiffs or their counsel.

The 64 interrogatories were filed with the application and as a part thereof. Defense counsel was in timely receipt of the interrogatories. Rule 82 provides that copies of all motions be filed with the original and the clerk shall forward the copies to counsel or the parties as the case may be. Since defendants have preserved all of their rights re the interrogatories no harm has resulted, except perhaps to confuse the record.

Defendants complain of the fact that the interrogatories were filed with the application. This seems to be a commendable procedure, though not essential. The filing of the interrogatories as part of the application serves to narrow the issues. The procedure provides both opposing counsel and the court with the information requisite to intelligent argument and subsequent decision. It does not constitute a filing which requires answer before the court rules on the application. The trial court so held by updating the time of effective filing.

II. The next consideration is plaintiffs' alleged failure to show good cause for asking more than 30 interrogatories. We should first review some of our recent decisions.

In Cave v. Fountain, 258 Iowa 1232, 142 N.W.2d 436, we considered problems growing out of application for authority to file more than 30 interrogatories. The relevant propositions established by that case are that such an application is to be treated as a motion; the parties are entitled to a hearing thereon; the necessity for answers to interrogatories may appear from the petition, answer, interrogatories and counsel's signature; if such necessity so appear (by the pleadings and questions themselves) separate showing by affidavit or evidence is not a prerequisite to an order; the filing of an affidavit with the interrogatories is not jurisdictional.

In Hot Spot Detector, Inc. v. Rolfes Electronics Corp., 251 Iowa 647, 102 N.W.2d 354, this court recognized the impact of the changes in rule 121 et seq., Rules of Civil Procedure, which occurred in 1957. That case affirms our position that the discovery rules are to be interpreted liberally to effect their purpose, the trend being to broaden the scope of discovery so as to give litigants access to all material facts. The test of relevancy under rule 143 is relevancy "to the subject matter involved in the pending action" rather than in determining admissibility of evidence as at trial or relevancy to the precise issues in the pleadings. Interrogatories should not be disallowed as irrelevant unless clearly outside the scope of the case.

III. The court apparently found, following the hearing, that there was sufficient cause to allow more than 30 interrogatories. We do not disagree.

138

The questions propounded are not clearly outside the scope of the case. They appear reasonably necessary to allow plaintiff to prepare for trial. Hot Spot Detector, Inc. v. Rolfes Electronics Corp., supra.

Defendants contend that Chandler v. Taylor, 234 Iowa 287, 12 N.W.2d 590, is authority for the proposition that an order permitting the filing of more than 30 interrogatories without a showing of good cause by affidavit or other evidence supporting the facts asserted in said application is an illegal order. As to the initial filing Cave v. Fountain had modified Chandler v. Taylor at least as to interrogatories.

Plaintiffs' application for authority to file more than 30 interrogatories specifically requested that the matter be set for hearing and that notice of said hearing be prescribed. The record is sufficient to support the court's decision to allow more than 30 interrogatories.

IV. Defendants next urge that the court erred in denying defendants an opportunity to present evidence in support of their objection to plaintiffs' interrogatories. We agree. In Cave v. Fountain, supra, we held that "parties are entitled to be heard."

Rule 116 provides: "Evidence to sustain or resist a motion may be by affidavit or in any other form to which the parties agree or the court directs. * * *." Plaintiffs did not file affidavits in connection with their application to file interrogatories. Thus counter-affidavits were not necessarily in order.

We have indicated that the court could pass on the question of the number of interrogatories without further evidence if it appeared that the pleadings and interrogatories provide sufficient information for an intelligent decision. But where one or more of the parties desire to offer evidence in connection with that matter or with specific objections, the opportunity should not be denied. It is within the court's sound discretion under rule 116 to receive the proffered evidence either by way of affidavit, direct evidence or such other form as the court reasonably directs. However, unless the request to produce evidence in some form is frivolous or clearly unnecessary, the parties must be allowed to make a record.

While defendants made no detailed offer of proof, they had indicated a desire to produce evidence at the hearing February 19, 1965. They had their witnesses in court on March 19, to support their objections to 11 interrogatories on the basis of oppressive cost and to eight objections on the basis of irrelevant requests for trade secrets. They apprised the court of their position and desire in sufficient detail to merit the right to make a record.

As to the 11 questions attacked as oppressive and requiring large expenditures of money, the rule is:

"If the information sought is a proper object of discovery it is ordinarily not a valid objection that an answer will require extensive research or the demand is vexatious, oppressive or burdensome. * * * The trial court has reasonable discretion in determining whether interrogatories should be answered and its action in this respect will not be disturbed except in case of abuse of such discretion." Hot Spot Detector, Inc. v. Rolfes Electronics Corp., supra, at page 656 of 251 Iowa.

Nevertheless, defendants had the right to show, if they could, that their objections in this case were valid. They were improperly denied the opportunity to do so.

V. Similar observations are apropos to the situation raised by the secret process-trade secret objection to eight questions. Evidence on the subject should have been allowed. As the record now stands objections to four of the questions were sustained. As to all others they were disallowed. The secret process-trade secret objections ordinarily cannot receive intelligent treatment without some evidence extrinsic to the pleadings and questions themselves. The situation is entirely different from that arising where objections to the questions go merely to relevancy, or where the issue goes only to the number of questions asked.

This type of objection is of particular importance. In Hartley Pen Co. v. United States District Court, 287 F.2d 324, 327, 328 (1961) (9 Cir.), the court said:

" 'As stated in Cincinnati Bell Foundry Co. v. Dodds (1887), 19 Week. Law Bull., 10 Ohio Dec. Reprint 154:

" ' "The property in a trade secret is the power to make use of it to the exclusion of the world. If the world knows the process then the property disappears. There can be no property in a

process, and no right of protection if knowledge of it is common to the world." '

 "It must not be inferred from the foregoing quotation that a trade secret need never be disclosed. A trade secret must and should be disclosed where upon a proper showing it is made to appear that such disclosure is relevant and necessary to the proper presentation of a plaintiff's or defendant's case. The delicate problem is to secure the right of one litigant to get relevant and necessary evidence and to protect the other litigant from disclosing secrets which are not relevant and necessary."

See also A. H. Robins Company v. Fadely (5 Cir.), 299 F.2d 557, 561, where the court quoted 4 Moore, 2d Ed., page 2468, as follows:

"There is no true privilege against discovery of trade secrets or other 'confidential' business information, but the courts nevertheless will exercise their discretion to avoid unnecessary disclosure of such information, particularly where the action is between competitors."

Rule 125 makes rule 141(d) specifically applicable to interrogatories. Rule 141(d) provides:

"After notice is served for taking a deposition by oral examination, upon motion seasonably made by any party or by the person to be examined and upon notice and for good cause shown, the court in which the action is pending may make an order that the deposition shall not be taken, or that it may be taken only at some designated place other than that stated in the notice, or that it may be taken only on written interrogatories, or that certain matters shall not be inquired into, or that the scope of the examination shall be limited to certain matters, or that the examination shall be held with no one present except the parties to the action and their officers or counsel, or that after being sealed the deposition shall be opened only by order of the court, or that secret processes, developments or research need not be disclosed, or that the parties shall simultaneously file specified documents or information enclosed in sealed envelopes to be opened as directed by the court, or the court may make any other order which justice requires to protect the party or witness from annoyance, expense, embarrassment or oppression."

The party seeking a protective order must show good cause for such order under rule 141(d). Here such parties tried to assume that burden but were prevented by the court's order. They should have been allowed to support their objections in detail by competent evidence. If a prima facie showing of need for protective orders is achieved, the questioning party must meet the issue.

Rule 141(d) has recognized the seriousness of the situation by giving the court several alternate choices of decision. It may well be that the situation would require that the court alone know the answers as well as the questions before making a final determination, with such protective orders as may be appropriate and just. If so, rule 141(d) is broad enough to cover the situation.

We therefore hold that those parts of the order overruling objections to interrogatories Nos. 2, 7, 16, 18, 19, 24, 30, 50, 51, 53 and 56 on the ground of oppression and unreasonable expense and that part of the order overruling objections to interrogatories Nos. 36, 44, 45 and 46 are reversed and this case is remanded with instructions to take evidence on objections to such interrogatories before a ruling is made.

VI. Defendants also complain of the court's inclusion in its order of the proviso that failure to answer the interrogatories within 30 days would result in default against them. We agree that the proviso was premature. The order seems to anticipate lack of good faith. The matter of sanction need not be considered until and unless defendants fail in their legal duties. The record is barren of any indication that such failure is to be anticipated. Further, if reasonably necessary, defendants would have the right to at least request additional time. They should not be foreclosed from the right to make such a request.

VII. Plaintiffs-appellants assign as error the court's action in sustaining objections to interrogatories Nos. 34, 39, 40 and 47. What has already been said need not be repeated in this division. No ruling on these questions should have been made until the court heard evidence produced by the objectors, and any countervailing evidence which the questioner might have produced. That part of the order sustaining objections to questions Nos.

142

34, 39, 40 and 47 is reversed and upon remand evidence is also to be taken on those four sets of objections before a ruling is made.—Affirmed in part, reversed in part and remanded.

All JUSTICES concur except RAWLINGS, J., who takes no part.