GERTRUDE BEARDSLEY, administratrix with will annexed of estate of Edith Beardsley, deceased, appellee, v. EARL E. OSTRANDER, SR., appellant.

No. 50751.

(Reported in 118 N.W.2d 61)

NOVEMBER 13, 1962.

Stuart & Stuart, of Chariton, for appellant.

A. V. Hass, of Chariton, for appellee.

THORNTON, J.—A jury verdict has been returned in favor of plaintiff-administratrix for the death of her decedent, a front seat passenger, and property damage in a head-on collision. From the judgment entered thereon defendant appeals, urging three propositions for reversal. They are: 1. The certified copy of the death certificate of plaintiff's decedent showing injuries received in the collision was improperly admitted. 2. An instruction on yielding one half the traveled way was confusing and misleading. And 3. The trial court erred in failing to instruct as requested on the contributory negligence of plaintiff's decedent in knowingly entrusting her automobile to an inexperienced or incompetent driver.

I. The first proposition urged arose when plaintiff offered in evidence the certified copy of the certificate of decedent's death, Exhibit P-19. Defendant conceded the time of decedent's death but objected to the admission of the certificate because it contained matters that are hearsay and it was not the best evidence. Plaintiff's counsel then stated the certificate was not offered to prove the cause of death but only to show the hour and date of death and the facts relative to the injuries sustained. Defendant's counsel then stated it was upon the last matter that the objection was based. The certificate contained, as required by section 141.4, Code of Iowa, 1958, the required historical matter and under Item 18, Cause of Death, "Punchered [sic] Right lung, Fractured Ribs, Fractured Right Arm, Fractured Left Ankle. Auto Accident on highway # 6." The jury was excused

and upon their recall the court limited their consideration of the certificate as follows:

"Let the record show the following ruling in connection with the offer of Exhibit P-19, made in the presence of the jury. Exhibit P-19 will be admitted into evidence for the purpose of proving the time of death of said decedent and for the purpose of proving the other facts stated in the certificate of death, but Exhibit P-19 shall not be considered by the jury as evidence that the injuries to the decedent sustained in the automobile accident in question were the cause of decedent's death."

Plaintiff called a medical doctor and asked him a hypothetical question including with other facts in the record, "and assume further that the certificate of her death shows that her injuries consisted of a punctured right lung, fractured ribs, fractured right arm and a fractured right ankle." Defendant objected to the question because it was based in part upon hearsay evidence. The doctor's answer was, "It is my opinion that the patient of that age, or any other age, with a punctured lung, fractured ribs, fractured right arm, that death was caused by chest injuries on the right side." The credence given the certificate by lay persons is shown by this cross-examination. Asked if it was possible there may have been complicating factors in the way of a heart attack the doctor answered, "Well, the statement says it was an accidental death."

Defendant's entire complaint here is the causes of death shown (i.e., punctured right lung, fractured ribs, fractured right arm, and fractured left ankle) were the opinion and conclusion of a lay coroner and the contents of his report were hearsay, the hypothetical question was therefore based on an opinion of another, and his motion to direct should have been sustained because there was no competent evidence decedent's death was caused by the collision. Simply, are the four injuries recited statements of fact or are they the opinion of the one filling out the certificate? We hold they are statements of fact.

Section 144.48, Code of Iowa, 1958 (Code 1962 is the same), provides: "Any certified copy of the record of a birth, death, or marriage, made under this chapter, shall be presumptive evidence in all courts and places of the facts therein stated."

We have not heretofore decided the question presented. But, in Morton v. Equitable Life Insurance Company of Iowa, 218 Iowa 846, 853, 254 N.W. 325, 328, 96 A. L. R. 315, an action on a life insurance policy providing there should be no liability in the event of suicide within one year from issuance of the policy, we held a death certificate bearing the words "suicide by hanging" and "suicide" in Item 18 was a conclusion and not a statement of fact. In the course of the opinion it was stated, "Neither do we think that the statement of the cause of death or the probable cause thereof is a statement of fact as is contemplated in section 2431 [now section 144.48], making such certificate presumptive evidence of the facts therein stated."

The purpose of the statute is also expressed in the opinion, "The statutes providing for the making and filing of certificates of birth, death, and marriage are for the purpose of perpetuating testimony as to such facts and data as are specific and known, but do not contemplate the perpetuating of hearsay testimony, which is merely conclusions or opinions of the person or persons making them." To the same effect see Holloway v. Bankers Life Co., 248 Iowa 517, 528, 81 N.W.2d 453, 460, and citations.

The Morton and Holloway cases differ from the present one. In those cases the death certificates were offered to prove the decedent committed suicide. In this case plaintiff offered the certificate for the limited purposes of the time of death and the injuries sustained. The trial court's ruling above set out excluded its consideration on the cause of death. Its purpose was to show the injuries sustained. If the listed injuries are "facts therein stated" the certificate was properly admitted. A person's statement of the condition of the person of another or of a corpse may contain some elements of a conclusion. Here, the fact a foot or leg twisted in an abnormal position would give rise to the statement the leg was fractured. Likewise, an arm. An examination by touching the ribs might well disclose abnormal position of the ribs, or it could well be visible where a portion of a rib extended through the skin. In this case it might well be the condition of the rib cage was such a part of a broken rib had visibly punctured the lung. It is possible too that a person so viewing a corpse would be mistaken in what he saw, that a more

thorough examination would be necessary to determine the exact or true facts. Only to the extent that it is a conclusion for a person to relate the ultimate fact he observed or determined by manipulation or otherwise are any of the listed injuries an opinion and conclusion. The difference between fact and objectionable opinion and conclusion is well pointed out in Carson v. Metropolitan Life Ins. Co., 156 Ohio St. 104, 114, 100 N.E.2d 197, 203, 28 A. L. R.2d 344, 351, and Kentucky Home Mutual Life Ins. Co. v. Watts, 298 Ky. 471, 477, 183 S.W.2d 499, 502. In each of these cases a suit on an insurance policy was resisted on the ground of suicide. The applicable statute in each case provided the death certificate shall be prima facie evidence of "the facts therein stated."

In the Kentucky case the court said, "The fact concerning the cause of death in the certificate which was contemplated by the Legislature is the fact that the deceased came to his death by a gunshot wound, the words 'self-inflicted' and 'suicide' being mere expressions of the opinion of the person filling out the certificate."

The Ohio court said, "We hold that 'the facts therein contained' are facts ascertainable from the evidence, such as the nature of the wound and how the wound caused death, as well as a description of the deceased and other like information. But, in the absence of any direct testimony as to suicide, an expression by a coroner or physician that a decedent committed suicide is a mere opinion and does not constitute a fact as contemplated by the provisions of the statutes to which we have referred."

The injuries listed on the death certificate do no more than state the nature thereof and describe the condition of the deceased, and are included in "the facts therein stated." We do not deem it important that the coroner was a layman rather than a professional man as claimed by defendant, there is no evidence of this. He was required by law to make the report. Sections 141.5 and 141.6, Code of Iowa, 1958. The truth or falsity of the matters stated is readily ascertainable. The statements contained in the certificate are only presumptive evidence. They may be refuted by any proper means including calling the coroner.

The death certificate was admissible as limited by the court.

■ II. Defendant complains the following portion of Instruction No. 8 was conflicting and confusing.

"If you find that either driver failed to yield one half of the traveled way, you should determine under all the facts, circumstances and conditions, as shown by the evidence, whether such driver was guilty of negligence in failing to so yield."

Defendant contends the above paragraph does not give the jury the opportunity to find that both drivers failed to yield one half the traveled way, that it becomes important on the consideration of right to control and joint enterprise on the question of decedent's responsibility for the contributory negligence of the driver. We believe the contention is hypercritical. The part of instruction 8 preceding that above quoted stated any person operating a motor vehicle upon a highway shall upon meeting another vehicle yield one half the traveled way, that failure to do so would not in itself constitute negligence, only presumptive evidence of negligence, that the facts and circumstance under which it took place could show that such failure was not due to the negligence of such party. We do not see how a jury could read the instruction and not understand it applied to both drivers and that the unexplained failure by either or both would constitute negligence. Or that either might be excused by the circumstances. A careful reading of the instructions on contributory negligence supports our conclusion. From the instructions as a whole, if the evidence had so warranted, the jury could not have misunderstood that the driver of decedent's auto could not only have been solely guilty of negligence causing the collision but also if she and defendant were both negligent in failing to yield one half the traveled way the contributory negligence of decedent's driver could be imputed to decedent.

III. Defendant's third contention is that it was error not to instruct as requested relating to negligence of plaintiff's decedent in knowingly entrusting the operation of her automobile to an inexperienced or incompetent driver. Such liability rests upon the combined negligence in loaning the car to an inexperienced or incompetent driver and the driver's negligence in its operation. Krausnick v. Haegg Roofing Co., 236 Iowa 985,

988 et seq., 20 N.W.2d 432, 434, 163 A. L. R. 1413 et seq., and citations.

■ Defendant's contention cannot be upheld because there is nothing in the record to sustain a finding decedent knew of the driver's claimed inexperience or incompetence. The record shows the driver was decedent's granddaughter and from the relationship it might be inferred decedent knew, to some degree at least, how long the driver had been driving a car. The record is the driver was 21 at the time of the accident. She did not own a car. She obtained a driver's license when she was 18. Prior to that she had a learner's permit. After high school the driver spent two years in college, she did not have a car to drive, her driving was limited to driving decedent's car on weekends. While she was teaching for a year she drove the car of another girl on occasion. One summer she drove a car some while teaching in a mission school. The summer of this accident, it happened August 28, 1958, the driver had been driving this same car three or four times a week for at least two months. There is no showing of prior accidents or conditions which would apprise decedent that the driver was incompetent. Decedent could assume her driver had passed a driving test to obtain her license and had driven a car in a normal manner since that time until the contrary appeared.—Affirmed.

All JUSTICES concur except STUART, J., takes no part.