Robert A. JONES, Jr., a Minor, by Robert A. Jones, Sr., his father and Next Friend; Robert A. Jones, Sr., Individually, and Irene D. Jones, Appellants,

v.

James A. SWANGER, Appellee.

No. 53468.

Supreme Court of Iowa.

May 6, 1969.

Joseph L. Phelan, Fort Madison, for appellants.

D. W. Harris, Bloomfield, and Stong & Dorothy, Keosauqua, for appellee.

LARSON, Justice.

In an action for damages for personal injury as a result of an automobile accident, subsequent to plaintiffs' petition and defendant's appearance but prior to his answer, plaintiffs made application for the

production of papers, i. e., statements prepared by defendant's automobile adjustor and signed by plaintiffs while patients at a hospital. When this application was denied, plaintiffs sought and were improvidently granted permission to appeal to this court.

The only issue to be considered at this time is whether under rule 129, R.C.P., the plaintiffs were entitled to an order requiring defendant to produce copies of the statements taken. We hold they were not, and that at that stage of the proceedings the trial court's ruling was correct.

I. Rule 129, Rules of Civil Procedure, provides:

"(a) After issue is joined in any action, any party may file an application for the production or inspection of any books or papers, not privileged, which are in the control of any other party, which are material to a just determination of the cause, for the purpose of having them inspected or copied or photostated. The application shall state with reasonable particularity the papers or books which are called for, and state wherein they are material to a just determination of the cause, and state that they are under the control of the party from whom production is requested. The movant need not use such documents as evidence at the trial.

"(b) The court shall fix the time and place for hearing on the application, and prescribe the manner and form of giving notice to the party from whom production is asked, or to his attorney of record."

Plaintiffs' motion or application herein was filed on July 18, 1968, subsequent to their June 5th petition alleging a good cause of action in several counts. Defendant had entered his appearance on June 17 and filed a motion to dismiss and a motion to strike on June 21, which were ruled upon by the court on July 8. Apparently no notice was given defendant of this filing and no hearing had thereon, but on July 25 the court, by calendar entry, overruled plaintiffs' application in its entirety, citing rule 141(a), R.C.P. This part of the rule provides:

"(a) The deponent shall not be required and the court shall not order a deponent or party to produce or submit for inspection any writing obtained or prepared by the adverse party, his attorney, surety, indemnitor or agent, in anticipation of litigation or preparation for trial unless satisfied that the denial of production or inspection will result in an injustice or undue hardship; nor shall the deponent be required or the court order a deponent or party to produce or submit for inspection any part of a writing which reflects an attorney's mental impressions, conclusions, opinions or legal theories, or, except as provided in rule 133, the conclusions of an expert. The deponent shall not be examined on nor shall the court order the production or inspection of any liability insurance policy or indemnity agreement unless such liability insurance policy or indemnity agreement would be admissible in evidence at the trial of the action."

In their application for permission to appeal, plaintiffs relied heavily on this provision claiming they had shown a denial of production or inspection would result in an injustice or undue hardship, and that it clearly appeared there was an abuse of the trial court's discretion in this denial. In light of the view we take of this cause, we do not reach the merits of that dispute. However, since this issue may again confront the trial court by a timely application, we note that pursuant to a *notice* and *hearing* on an application made *after* the issue is joined, our rules of discovery are to be liberally interpreted (Jones v. Iowa State Highway Commission, Iowa, 157 N.W.2d 86, 87) that the trial court is vested with discretion to control, limit, and even prevent discovery when it will not promote the administration of justice in a particular case. Kaltenheuser v. Sesker, 255 Iowa 110, 115, 121 N.W.2d 672, 674; 23 Am.Jur.

2d, Depositions and Discovery, § 149. This discretion, of course, is not unlimited. Jones v. Iowa State Highway Commission, supra. It is said to be a power to be utilized justly and impartially by the application of relevant, legal, and equitable principles to all known or readily available facts of a given issue or course, to the end that justice may be more nearly effectuated. See Cogley v. HyVee Food Stores, Inc., 257 Iowa 1381, 1386, 137 N.W.2d 310, 312.

■ II. From the record in this case it appears defendant's answer was filed on July 29, 1968, eleven days after plaintiffs' application to produce papers was filed, and four days after the court had denied that application. Thus, we are faced squarely with the question as to whether rule 129 must be complied with as a prerequisite to any application for the production or inspection of any books or papers. We hold it must be strictly complied with and that only *after* issue is joined can such an application be considered by the court. The rule means just what it says, and an application such as we have here which was filed before issue was joined must be rejected as premature. This is what the trial court did, and on that basis we must affirm its action.

Affirmed.

All Justices concur except BECKER, STUART and MASON, JJ., who concur specially.

BECKER, Justice (specially concurring).

I concur because it is clear plaintiff made his application for production of books and documents before answer was filed. However, it is apparent the trial court's decision is based on the character of the information rather than the timing of the filing. Rule 129, upon which we turn in this case, was not considered by the trial court. Obviously the court's ruling on the basis of

rule 141(a) forecasts the same result if and when timely application is made. Therefore it would appear the observations made for the trial court's benefit when the matter is raised anew are too equivocal.

The real issue here is whether a party can procure a copy of *his own written* statement prior to trial or prior to his appearance to take his deposition. We should clearly state that *any person who gives a written or recorded verbal statement* is entitled to a copy of it upon request. If the person is reduced to a discovery proceeding to get a copy of his own statement, the production should be ordered and failure to so order should be conclusively presumed to be a denial which would, in the words of the rule, "result in injustice or undue hardship."

See Fleming James, Jr., Civil Procedure, section 6.10, page 212: "Special necessity should also be found where the discoverer is seeking his own statement or that of another party. In the first place, such statements are always potential substantive evidence *against* the party making them and as we have seen that should suffice to justify discovery. In this respect party statements are different from statements of nonparty witnesses which are admissible, if at all, only for purposes of impeaching the witness. Beyond that, where a party seeks to inspect his own prior statement, taken by the other side before the party is represented by counsel, there is a widespread feeling on the part of courts and legislatures that common fairness and decency require that he be given that chance. In spite of this some courts have denied discovery of a party's own prior statement unless there is an additional showing of necessity."

A strong stand on this matter would be fully justified by the American Bar Association's compact with the various insurance companies and insurance adjusters,[1]

1. It has been approved by: American Bar Association, American Mutual Alliance, Association of Casualty and Surety Companies, International Claim Association, National Board of Fire Underwriters, National Association of Independent Insurance Adjusters and the National Association of Independent Insurers.

which reads in part: " * * * . (b) The companies may properly interview any witnesses, or prospective witnesses, without the consent of opposing counsel or party. * *.

"If any witness making a signed statement so requests, he shall be given a copy thereof.

"Note: At a meeting on March 7, 1954, the Conference Committee agreed: (1) that this language applies to all witnesses—plaintiff's, defendant's and neutral witnesses; (2) that no time limit is placed upon the witness requesting a copy of this statement; and (3) that the obligation to furnish the copy of the statement runs only to the witness himself or herself." Martindale-Hubbell Law Directory, Vol. III, pages 144A and 145A.

Of course there is no showing that the lawyers here involved are members of the American Bar Association or that any insurance companies or insurance adjusters are even in this case, much less bound by the agreement. Further, it is quite true that this court and the trial court need pay no heed to the compact. In fact, no one seems to pay much heed to the agreement except the Martindale-Hubbell Company which faithfully reprints the compacts of the American Bar Association each year.

Nevertheless, the quoted portion of the agreement affords recognition to what should be a self-evident principle; namely, when a recorded statement is taken from a person, be he party, witness or bystander, *that person should be entitled to a copy of the statement upon request.*

We should continue to minimize the effects of the game of chance that is our adversary system. I would plainly indicate to the trial court that, *upon proper timely request,* plaintiff should be entitled to his own statement wherever and to whomever made, if it is in possession of defendant or his representative.

STUART and MASON, JJ., join in this special concurrence.