Larry Elden EDMAN,
Petitioner–Appellant,

v.

STATE of Iowa, Respondent–Appellee.

No. 88–254.

Court of Appeals of Iowa.

May 23, 1989.

William L. Wegman, State Public Defender, and James F. Whalen, Asst. Public Defender, for petitioner-appellant.

Thomas J. Miller, Atty. Gen. of Iowa, and Thomas D. McGrane, Asst. Atty. Gen., for respondent-appellee.

Considered by SCHLEGEL, P.J., and HAYDEN and SACKETT, JJ.

SCHLEGEL, Presiding Judge.

The applicant, Larry Edman, appeals the denial of his application for postconviction relief. He contends that the court erred in 1) finding that he had failed to prove ineffective assistance of counsel, 2) finding that he had failed to prove that he was deprived of the opportunity to make an intelligent and informed choice among his alternatives in making a plea of guilty, and

3) failing to find that the State had violated its plea agreement. We affirm.

Larry Edman was arrested and charged, in Floyd County, of OWI third offense. In January 1985, pursuant to a plea bargain, Edman entered a plea of guilty to OWI first offense. He was sentenced to six months in jail, with that sentence suspended, fined $500, and placed upon one year probation. No appeal was taken from that conviction or sentence. At the plea proceedings, the following colloquy concerning part of the plea bargain occurred:

THE COURT: Mr. Egli [counsel for Edman], you've heard the county attorney. Is this a fair summary of your discussion?

MR. EGLI: Yes. All the things that he mentioned are according to our agreement, and I think there was an additional provision, however, that the defendant would not, by virtue of pleading guilty to the first, be subject to habitual violator prosecution.

MR. NOAH: [The County Attorney] That's correct.

MR. EGLI: Otherwise, it's as stated.

THE COURT: Mr. Edman, you've heard the statements of the attorneys. Is this what has been relayed to you?

THE DEFENDANT: Yes, your Honor. . . .

On July 15, 1985, the county attorney of Bremer County filed a petition under the provisions of sections 321.555 through 321.562 of the Iowa Code, seeking to find Edman to be an habitual offender, and to bar him from operating a motor vehicle on the highways of the State of Iowa. The statute under which the petition was filed provides, in relevant part, as follows:

As used in this division, "habitual offender" means any person who has accumulated convictions for separate and distinct offenses described in subsections 1, . . . .

1. Three or more of the following offenses, either singularly or in combination, within a six-year period:

a. Manslaughter resulting from the operation of a motor vehicle.

b. Operating a motor vehicle in violation of section 321J.2 (OWI).

c. Driving a motor vehicle while operator's or chauffeur's license is suspended or revoked.

d. Perjury or the making of a false affidavit or statement under oath to the department of public safety.

e. An offense punishable as a felony under the motor vehicle laws of Iowa or any felony in the commission of which a motor vehicle is used.

f. Failure to stop and leave information or to render aid as required by section 321.263.

The abstract of Edman's driving record shows (1) conviction for driving while his license was under suspension on May 15, 1979; (2) conviction for OWI on May 24, 1982; (3) conviction for OWI on June 27, 1984; and (4) conviction for OWI in Floyd County on January 7, 1985, in addition to a speeding charge on January 30, 1984, and a failure to appear on January 10, 1984. On August 15, 1985, Edman was found to be an "habitual offender" as defined in section 321.555, above, and was barred from operating a motor vehicle on the highways of the State of Iowa for a period of two years from that date.

Edman complains that his plea of guilty in this case was invalid because it was based upon misleading advice from his counsel. He contends that because of his counsel's erroneous advice he accepted a plea bargain because he believed that accepting it would eliminate the threat of habitual offender proceedings under Iowa Code section 321.555. He claims that counsel's advice was not within the normal range of competency and that he was prejudiced thereby.

The State does not contest Edman's argument that he is entitled to raise the validity of the guilty plea, even though he did not file a motion in arrest of judgment and did not appeal the conviction. The State correctly asserts that if Edman is correct on the merits of his ineffectiveness claim, he has shown justifiable cause for his failing to raise the issue on a motion for arrest of judgment or on direct appeal.

■ Our ultimate concern in claims of ineffective assistance is with the "fundamental fairness of the proceeding whose result is being challenged." *State v. Risdal*, 404 N.W.2d 130, 131 (Iowa 1987), quoting *Strickland v. Washington*, 466 U.S. 668, 696, 104 S.Ct. 2052, 2069, 80 L.Ed.2d 674, 699 (1984). We review de novo the totality of the circumstances relating to counsel's conduct, keeping in mind the presumption that counsel performed competently. *Risdal*, 404 N.W.2d at 131. The burden is on the defendant to prove by a preponderance of the evidence that (1) counsel failed to perform an essential duty and (2) prejudice resulted.

■ Edman's driving record was in such condition that he was an habitual offender under the provisions of Iowa Code section 321.555, whether he was found guilty of the charge in this case or not. Considering the prejudice prong of the test of ineffective assistance of counsel, as it concerns the outcome of the habitual offender proceedings, defendant fails to show that he was prejudiced by his guilty plea in this case. *See State v. Hildebrant*, 405 N.W.2d 839, 841 (Iowa 1987).

Were the issue merely that mistaken advice of counsel resulted in a finding of habitual offender because his plea of guilty triggered action by the Iowa Department of Transportation, as Edman suggests, the fact that he already qualified for such a treatment would cause a failure to show prejudice because of the lack of accurate advice, even if it were found that his attorney failed in an essential duty. That, however, is not the only issue for our consideration.

The more important issue is whether the advice Edman received caused him to relinquish his right to trial because he was led to believe that by accepting the proffered plea bargain he would avoid habitual offender proceedings. As the supreme court stated in *Meier v. State*, 337 N.W.2d 204 (Iowa 1983):

A guilty plea must represent the informed, self-determined choice of the defendant among practicable alternatives;

a guilty plea cannot be a conscious, informed choice if the accused relies upon counsel who performs ineffectively in advising him regarding the consequences of entering a guilty plea and of the feasible options.

*Id.* at 207 (quoting *Hawkman v. Parratt,* 661 F.2d 1161 (8th Cir.1981)). Moreover:

> To prove that counsel was ineffective, the ... petitioner must demonstrate that the advice was 'not within the range of competence demanded of attorneys in criminal cases. (Citation omitted.)
>
> Under this test, counsel must inform the defendant concerning the direct consequences of a guilty plea. But counsel is not ordinarily required to advise specifically of indirect or collateral consequences; such a requirement would call for conduct beyond the range of normal competency. (Citations omitted.)

*Saadiq v. State,* 387 N.W.2d 315, 325–326 (Iowa 1986).

It is apparent from the record in this case, that the question of Edman's prosecution as an habitual offender was considered by both Edman and his counsel. The State argues that what the parties really had in mind was the revocation that would have been imposed upon conviction of a third-offense OWI under the provisions of Iowa Code section 321.281(9)(a) (Iowa Code § 321J.4(3) (1987)), which provides:

> Upon a plea or verdict of guilty of a third or subsequent violation of this section, the court in which the plea was entered or the verdict was returned shall order that the defendant's license or permit to operate motor vehicles be revoked by the department and that the defendant shall remain ineligible for a license or permit for a period of six years. Any license or permit to operate motor vehicles held by the defendant shall be surrendered to the court who shall forward it to the department with a copy of the order for revocation.

While it would seem logical that Edman and his attorney would have considered that section, the record does not support the State's argument. From the record, it seems clear that the parties had in mind

the provisions of sections 321.555 through 321.562. The provisions of section 321.281(9)(a) (Iowa Code § 321J.2(2)(c) (1987)) would have triggered a revocation even upon a plea or a finding of guilty of a first offense, since it would have been a finding of guilt or a plea on a third violation. *See State v. Raim,* 381 N.W.2d 635, 637 (Iowa 1986); *State v. Blood,* 360 N.W.2d 820, 822 (Iowa 1985). Thus, the reduction of the charge from third offense to first offense would have had no effect. The State's argument in this regard is without merit.

■ At the hearing on postconviction relief, Edman testified that had he known he was subject to being found an habitual offender without the conviction on this charge, he would not have pleaded guilty, but would have stood trial. It is his contention that defense counsel had an obligation to seek out his driving record so that he could be advised that he was subject to the habitual offender provisions before the disposition of his case. He argues that counsel's failure was the violation of an essential duty. There is no evidence in the record before us that Edman advised his lawyer of his driving record. He is certainly charged with the knowledge of his convictions for violations involving the operation of a motor vehicle. He makes no claim that he advised counsel of his record, and that thereupon, counsel misadvised him as to the consequences of that record. Counsel cannot be guilty of violating an essential duty by failing to tell Edman what he already knew. From the situation apparent here, to require that counsel seek out the driving record would be beyond the level of normal competency required of an attorney. As stated in *Mott v. State,* 407 N.W.2d 581, 584 (Iowa 1987):

> To hold, ... that a level of normal competency by an attorney requires anticipation and research of all possible collateral consequences, even "serious" ones, expects too much.

On this record, we cannot hold that counsel gave Edman erroneous advice. Edman has failed to carry his burden to prove that his counsel violated an essential duty. He has failed to show that he was deprived of

his due process rights by reason of ineffective assistance of counsel. We are at a loss to understand how he avoided the six-year revocation of his driving privileges under section 321.281(9)(a) (Iowa Code § 321J.4(3) (1987)), and how he managed to obtain the minimum revocation under section 321.555, *et seq.* on the basis of his record before his guilty plea in this case. We do not believe Edman received ineffective assistance of counsel in any respect.

Edman also claims the State failed to abide by the agreement made at the time of the plea, that his plea to the first would not make him subject to the habitual violator provisions. The plea in this case is not what made him subject to those provisions. He was already qualified for that distinction. The prosecuting attorney in Floyd County did not bring the action to have Edman declared an habitual violator. That occurred in the county of his residence, Benton County. Edman's argument that the State failed to abide by its agreement made in the plea bargain is without merit.

AFFIRMED.